UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 06-CV-1684 (JFB)
_____

CARLOS VERA,

Petitioner,

VERSUS

ROBERT WOODS, SUPERINTENDENT OF THE UPSTATE CORRECTIONAL FACILITY
LOCATED IN MALONE, NEW YORK,

Respondent.

_____

MEMORANDUM AND ORDER
May 21, 2008
_____

JOSEPH F. BIANCO, District Judge:

Carlos Vera (hereinafter, "petitioner" or "Vera") petitions this Court for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. Petitioner was convicted in a judgment rendered on April 3, 2002, following a jury trial in New York County Court, Suffolk County. Petitioner was convicted of Gang Assault in the First Degree [N.Y. Penal Law § 120.07] and Assault in the Second Degree [N.Y. Penal Law § 120.05], and was sentenced to two determinate terms of imprisonment of twelve (12) and seven (7) years, respectively, to be served concurrently.

Petitioner challenges his conviction on the following grounds: (1) the State violated petitioner's rights under the Due Process Clause of the Fourteenth Amendment when the trial court allowed an unreasonable identification to be submitted to the jury; (2) the State violated petitioner's rights under the Due Process Clause of the Fourteenth Amendment by obtaining his conviction through evidence which was insufficient as a matter of law to sustain the conviction by proof beyond a reasonable doubt; (3) the State violated petitioner's First and Fifth Amendment rights by allowing certain evidence relating to petitioner's tattoo to be admitted at trial; and (4) the trial court erred in allowing unfairly prejudicial demonstrative evidence relating to a scar on the victim's chest to be published to the jury.

For the reasons stated below, petitioner's request for a writ of *habeas corpus* is denied in its entirety.

I. BACKGROUND

A. Underlying Facts

The following facts are adduced from the instant petition and underlying record.[1]

On June 21, 2002, Eric Bonilla ("Bonilla") went to his family's restaurant, Acajunta (the "Restaurant"), in Brentwood, New York, to celebrate his twenty-first birthday. (Tr. at 250.)[2] At one point, he observed two men speaking to his fourteen-year-old sister, Caroline Bonilla ("Caroline"). (*Id.* at 150-51.) Bonilla's brother, Mark Hernandez ("Hernandez"), told his sister to go inside and she did. (*Id.* at 177.) After watching the two men make a phone call, Bonilla and Hernandez joined their sister inside the Restaurant. (*Id.* at 152.) While they were in the Restaurant, Edyi Yesenia Mesa ("Mesa"), a waitress at the Restaurant, saw a women later identified as Jacqueline Jacobs ("Jacobs"), make a phone call. (*Id.* at 249-252.) She then saw her pass from the street next to the Restaurant to the deli, making signs with her hands. (*Id.* at 419.)

Later, Bonilla went outside the Restaurant with his girlfriend. Hernandez and his two sisters – Caroline and Jennifer – were about to leave to get Chinese food. (*Id.* at 152-53.) After Bonilla's sisters got into the car, fifteen to twenty men approached Bonilla and Hernandez, some armed with bats and knives. (*Id.* at 153.) Bonilla testified that at that moment, everyone started to run. (*Id.*) Bonilla pushed his girlfriend into the Restaurant and began to run. (*Id.*)

The group of men caught up with Bonilla and attacked him. (*Id.* at 4.) They hit and broke his arm with a bat and stabbed him in the chest with a knife. (*Id.* at 154.) After the stabbing, the attackers rushed back to their cars and fled the scene. (*Id.* at 180-81.) Hernandez, believing that the assailants took Bonilla with them, got into his car and followed one of the cars that he believed to be of the assailants. (*Id.* at 181.) Hernandez called 911 while he was driving and, after losing the assailants' vehicle, returned to the Restaurant. (*Id.* at 181-82.)

Detective John Rodriguez responded to the 911 call and, along with other officers, began to gather evidence from witnesses at the Restaurant. (*Id.* at 558.) During this time, a car drove by the Restaurant. (*Id.* at 331.) Caroline identified that car as one of the cars that she saw leaving the scene of the incident with the attackers inside. (*Id.*) Officers pulled the car over and found that it contained Manuel Alvarenga, Elmer Quenteros, Edwin Larios, and Jacqueline Jacobs.[3] (*Id.* at 361-365.)

Mesa gave a statement to the police that night. (*See* Pet.'s Appendix, at 7.) She testified at trial that she observed the incident through a large picture window from inside the Restaurant. (Tr. at 411.) She saw about fifteen

---

[1] A comprehensive summary of evidence at trial, including citations to the trial transcript, is also contained in the briefs to the Appellate Division, Second Department, which are contained in Petitioner's Appendix, at 23-81.

[2] "Tr." refers to the transcript of the trial proceedings in the underlying criminal action.

[3] Alvarenga, Quenteros, Larios, Jacobs, and another individual (Jose Corea), were also charged in connection with the assault and tried along with petitioner. Co-defendants Alvarenga, Larios, and Corea were convicted at trial of one or more charges, and the charges against co-defendants Quenteros and Jacobs were dismissed at the conclusion of the prosecution's case. (Pet.'s Appendix, at 26.)

2

to twenty men chasing Bonilla towards the deli. (*Id.*) She said that at least three men caught him in front of the Restaurant. (*Id.* at 411-412.) She saw that a man holding Bonilla from behind had a bat, and that two men were holding Eric from in front. (*Id.* at 412.) One man had a knife, and the other had a bottle. (*Id.*) She testified that she shook the door to the Restaurant and Bonilla broke free. (*Id.*)

Two days later, Mesa noticed the petitioner, Carlos Vera, at the Restaurant with four other individuals. (*Id.* at 421-22.) She recognized him as one of the individuals from the assault and was afraid, so another waitress took their order. (*Id.*) Mesa testified that Vera pointed and began making faces at her. (*Id.*) She told the other waitress that he had been involved in the attack on Bonilla. (*Id.*) The police were called. (*Id.* at 422.) Petitioner was arrested at the Restaurant on June 23, 2002.

B. Procedural History

Petitioner was charged with Gang Assault in the First Degree [N.Y. Penal Law § 120.07], Assault in the First Degree [N.Y. Penal Law § 120.10], and Conspiracy in the Fourth Degree [N.Y. Penal Law § 105.10]. The charge of conspiracy was dropped at the close of the State's case. (Tr. at 688-703.)

On April 3, 2002, in Suffolk County, New York, a jury convicted petitioner of Gang Assault in the First Degree [N.Y. Penal Law §120.07] and a lesser-included charge of Assault in the Second Degree [N.Y. Penal Law § 120.05]. (Tr. at 1225-1231.) On April 9, 2002, petitioner was sentenced to a determinate term of twelve years incarceration for the first degree charge and a concurrent determinate term of seven years for the second degree charge.

On April 10, 2002, Vera appealed his conviction to the Appellate Division, Second Department, claiming that: (1) the People's opening was inadequate; (2) the trial evidence did not meet the standard of guilt beyond a reasonable doubt; (3) the trial court failed to give a missing witness charge; (4) the People's argument that some witnesses were uncooperative was a sham; and (5) the conviction was the result of a compromise verdict. The Appellate Division affirmed the judgment of conviction in a decision and order dated October 25, 2004. *People v. Vera*, 11 A.3d 716 (N.Y. App. Div. 2004).

Vera then filed an application with the New York Court of Appeals for leave to appeal the Appellate Division's order on the claims regarding the lack of a missing witness charge and the insufficient opening statement. On January 14, 2005, the New York Court of Appeals denied petitioner's application for leave to appeal the decision. *People v. Vera*, 4 N.Y.3d 768 (N.Y. 2005).[4]

On April 11, 2006, Vera petitioned this Court for a writ of *habeas corpus*.

---

[4] On December 2, 2005, petitioner filed in New York County Court, Suffolk County, a motion to vacate the judgment against him pursuant to N.Y. C.P.L. § 440.10, in which he alleged: (1) prosecutorial misconduct; and (2) ineffective assistance of counsel. On January 20, 2006, the County Court denied petitioner's motion. The Appellate Division has yet to decide petitioner's request for leave to appeal that decision. The grounds raised in the petitioner's 440 motion are not being asserted in this petition.

3

## II. Discussion

### A. Legal Standard

To determine whether petitioner is entitled to a writ of *habeas corpus*, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

The AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit has added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

### B. Procedural Default

Petitioner asserts the following claims before this Court: (1) the State violated the petitioner's rights under the Due Process Clause of the Fourteenth Amendment when the trial court allowed an unreasonable identification to be submitted to the jury; (2) the State violated the petitioner's rights under the Due Process Clause of the Fourteenth Amendment by obtaining his conviction through evidence which was insufficient as a matter of law to sustain the conviction by proof beyond a reasonable doubt; (3) the State

4

violated the petitioner's First and Fifth Amendment rights by allowing certain evidence relating to petitioner's tattoo to be admitted at trial; and (4) the trial court erred in allowing unfairly prejudicial demonstrative evidence relating to a scar on the victim's chest to be published to the jury. As set forth below, these claims should be deemed exhausted but procedurally barred because petitioner failed to raise them on direct appeal. In any event, even assuming *arguendo* that these claims were reviewable, they are without merit.

Before a federal court can consider a petition for a writ of *habeas corpus*, the petitioner must have exhausted all available state judicial remedies. 28 U.S.C. 2254(b)(1); *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Exhaustion of state remedies requires that a petitioner "'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Duncan*, 513 U.S. at 365 (some quotation marks omitted) (quoting *Picard*, 404 U.S. at 275). "[I]t is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. To provide the State with the necessary "opportunity", the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-366. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982))); *see also Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 191). However, "it is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citing *Picard*, 404 U.S. at 277, and *Gayle v. Le Fevre*, 613 F.2d 21 (2d Cir. 1980)). State courts have been given a reasonable opportunity to pass on the federal *habeas* claim if the legal basis of the claim made in state court was the "substantial equivalent" of that of the *habeas* claim. *Picard*, 404 U.S. at 278; *see also County Ct. of Ulster County v. Allen*, 442 U.S. 140, 149 (1979); *Gayle*, 613 F.2d at 22 n. 2; *United States ex rel. Gibbs v. Zelker*, 496 F.2d 991, 993-94 (2d Cir. 1974). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192. "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276 and *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). "Likewise, the petitioner must have placed before the state court essentially the same legal doctrine he asserts in his federal petition." *Id.* at 192 (citing *Picard*, 404 U.S. at 276, *Callahan v. Le Fevre*, 605 F.2d 70, 72 (2d Cir. 1979), *Wilson v. Fogg*, 571 F.2d 91, 92-93 (2d Cir. 1978), and *Fielding v. Le Fevre*, 548 F.2d 1102, 1107 (2d Cir. 1977)). "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis

5

was substantially different from that asserted in state court." *Id.* (footnote omitted).

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989) and *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (quoting Hoke, 933 F.2d at 120 (quoting *Harris*, 489 U.S. at 263 n.9)). However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 126 S.Ct. 2378 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996), and *Coleman*, 501 U.S. at 744-51). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Netherland*, 518 U.S. at 162 (citations omitted).

In the instant case, following his conviction, petitioner filed a direct appeal to the New York Appellate Division. In his brief to the Appellate Division, petitioner raised the following issues: whether (1) the People's opening was adequate; (2) the petitioner's guilt was proven beyond a reasonable doubt; (3) the court should have issued a missing witness charge; (4) the People's argument that some witnesses were uncooperative was a sham; and (5) the conviction was a compromise verdict. In petitioner's letter application to the New York Court of Appeals, which was subsequently denied, the only issues petitioner requested review of were: (1) whether the trial court incorrectly declined to issue a missing witness charge; and (2) whether the People's opening statement was adequate. None of the claims that petitioner asserts before this Court were presented to the Court of Appeals for review.[5] The claims that petitioner now asserts were all reviewable from the record; however, none of them were raised on direct appeal. A petitioner for federal *habeas corpus* relief procedurally defaults his claim by not raising it on direct appeal. *Id.*; *see also Graham v. Costello*, 299 F.3d 129, 133 (2d Cir. 2002). Because petitioner no longer has any state remedies available to him, which occurs when a petitioner has defaulted his federal claim in state courts, he meets the technical requirements for exhaustion. *Coleman*, 501 U.S. at 732. Thus petitioner's claims are

---

[5] In fact, the only issue in petitioner's current petition that was previously presented to the Appellate Division was whether petitioner's guilt was proven beyond a reasonable doubt.

6

deemed exhausted under 28 U.S.C. § 2254(b) because petitioner no longer has remedies available in the New York State courts. However, petitioner's claims are procedurally barred because he did not raise them on direct appeal, although there was a sufficient factual record to permit such review. *Hoke*, 933 F.2d at 121. Accordingly, because when a petitioner's claims are procedurally barred, federal *habeas* courts also must deem the claim procedurally defaulted, *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003), petitioner is not entitled to have these claims entertained in a federal *habeas* proceeding unless he satisfies the standard articulated below.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 749-750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases – for example, where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S.478, 495 (1986). Here, petitioner has provided no explanation for his failure to raise these claims in his direct appeal in state court, nor has he demonstrated that a fundamental miscarriage of justice would occur if these claims were not reviewed by the *habeas* court. Not only is petitioner's application devoid of any claim of actual innocence, but the evidence presented at trial clearly established petitioner's guilt beyond a reasonable doubt. Accordingly, petitioner's claims are deemed to be exhausted, but are procedurally barred from review by this Court. In any event, assuming *arguendo* that these claims are reviewable, they are all substantively without merit, as set forth *infra*.

### C. The Reliability of the In-Court Identification

Petitioner first claims that he was denied due process rights when the state court allowed Mesa to identify him at trial. Specifically, petitioner alleges that Mesa's pretrial identification was unreliable, and therefore her in-court identification should have been precluded. As set forth below, the Court concludes that this claim lacks merit and does not provide a ground for *habeas* relief.

In determining whether an in-court identification should be precluded, "[t]he reviewing court must first determine whether the pretrial identification was 'unnecessarily suggestive' in light of the 'totality of the circumstances.'" *Alvarez v. Conway*, No. 05 Civ. 3235 (NRB), 2005 WL 3434634, at *7 (S.D.N.Y. Dec. 13, 2005) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). "A conviction based on eyewitness identification will be set aside if the pre-trial identification procedure used was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Snow v. Reid*, 619 F. Supp. 579, 581 (S.D.N.Y. 1985) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). The reliability of eyewitness pretrial identification is determined by weighing five factors:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

7

*United States v. Butler*, 970 F.2d 1017, 1021 (2d Cir. 1998) (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). While this test was established to address pre-trial identifications, it also applies to identifications made at trial. *Kennaugh v. Miller*, 289 F.3d 36, 47 (2d Cir. 2002) ("[T]he Biggers analysis applies to . . . in-court identifications for the same reasons that the analysis applies to impermissibly suggestive pre-trial identifications. The due process concerns are identical in both cases and any attempt to draw a line based on the time the allegedly suggestive identification technique takes place seems arbitrary. All the concerns that underlie the Biggers analysis, including the degree of suggestiveness, the chance of mistake, and the threat to due process are no less applicable when the identification takes place for the first time at trial.") (citing *United States v. Rundell*, 858 F.2d 425, 426 (8th Cir. 1988)).

Petitioner points to certain aspects of eyewitness Mesa's testimony and attempts to call into question her attention to detail. For example, petitioner argues that "if she were able to observe 15 to 20 people in a span of 5 to 10 seconds, she had only fractions of a second to devote to each individual." (Petitioner's Br., at 6.) Moreover, petitioner argues that "a review of the record discloses such a scene of chaos and disarray, that it could hardly be said that she was able to devote her full attention to any particular observation of Petitioner." (*Id.* at 7.)

Although petitioner argues that the scene of the crime and other factors did not permit Mesa to obtain a good view of petitioner,[6] the Court finds, after considering the *Biggers* factors, that there is no basis to conclude that the eyewitness identification of petitioner is unreliable. To the contrary, as set forth below, the *Biggers* factors support the independent reliability of Mesa's identification of petitioner.

First, the witness had a clear opportunity to view the incident. She testified that she viewed the incident through a large picture window, where she saw three men assaulting the victim outside the Restaurant. (Tr. 411.) She further testified that, by the time they grabbed the victim at the door, there was no one between the witness and the victim's three attackers. (Tr. 431-32, 440.) She also described how the victim was stabbed as he was leaning on the glass door to the Restaurant and she watched it for 5 to 10 seconds. (Tr. 479-81.) She also testified that she was standing at the door and shook the door, at which time the victim ran and they chased after him. (Tr. 412.) Mesa testified that the lighting inside and outside the Restaurant allowed her to see everything clearly. (Tr. 482.) Moreover, Mesa was able to have such a clear view of the attack that she testified at trial that she was able to see a tear tattoo on the face of one of the attackers. (Tr. 416-17.)

Second, Mesa's testimony about the assault indicates that she was paying close attention to it. For example, she recalled where the assailants were standing and who had which weapon. *See, e.g.,* Tr. at 412 ("One of them was holding him from the front, the other one was in the back and the other one was also in the front."); *id.* ("The one who was standing in the front of him had a knife. The one standing behind him had a bat, and the other one standing also in front of him had a bottle."). In addition, she specifically testified that

---

[6] There were several questions of visibility raised by petitioner at trial, including the large number of individuals involved in the assault, the number of individuals in between Mesa and the victim, and the race of the assailants.

petitioner had the bat and was hitting the victim with the bat. (Tr. 418.)

Third, in terms of the level of certainty demonstrated by the witness at the time of identification, Mesa immediately recognized petitioner as one of the assailants when he walked into the Restaurant two days after the attack, and called the police.[7] (Tr. 421-22.) Moreover, in court, she specifically identified petitioner as the one who hit the victim with a bat, based (among other things) upon the teardrop tattoo under his eye. (Tr. 415-16.) Mesa picked out petitioner at the trial without any hesitancy whatsoever. (Tr. 415-16.) Thus, the witness demonstrated certainty with respect to her identification.

Fourth, her identification was in close proximity in time to the incident. She gave a statement to the police on the day of the assault. As noted above, the witness immediately called the police two days later to identify the petitioner as one of the assailants, when petitioner returned to the Restaurant. (Tr. 422.) Thus, the length of time between the crime and confrontation was not so long as to raise any uncertainty as to the witness identification.

Fifth, although petitioner argues that the witness' prior description of the attackers to the police demonstrates her unreliability, the police report does not support that argument. The Court recognizes that the report recounts her statement to the police about the incident and lacks details about the physical characteristics of the assailants. (Pet.'s Appendix, at 7.) However, there is nothing in the witness statement that contradicts or is inconsistent with the physical characteristics of the petitioner. Moreover, although petitioner points out that there is nothing in the statement about the attacker having a tear tattoo, the failure to mention that fact in her statement does not make it unreliable.

Finally, the randomness of the witness' encounter with the petitioner two days after the assault, along with the fact that there was no police involvement in her identification on that date, undermines any argument that the pre-trial identification was impermissibly suggestive in any manner.

In short, after a careful review of the record in light of the *Biggers* factors, the Court finds that there is no basis to conclude that Mesa's eyewitness testimony was unreliable and the state court did not err in allowing this identification testimony to be submitted to the jury. Accordingly, *habeas* review on this ground is unwarranted.

### D. The Sufficiency of the Evidence Claim

Petitioner claims that his conviction violated the Fourteenth Amendment because there was insufficient evidence to prove his guilt beyond a reasonable doubt. As set forth below, after a careful review of the record, the Court finds this claim to be without merit.

The law governing *habeas* relief from a state conviction is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court of State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997). A "state criminal conviction will be upheld if, 'after

---

[7] Her certainty is corroborated by her second written statement to the police which stated: "Today, Saturday 6/23, at about 1PM, a group of 5 guys came into the restaurant and I recognized one of them to be the person who was hitting Eric Bonilla with the baseball bat. I called the police and when they got to the restaurant I told them about this guy and they then arrested him. I now know this person to be Carlos Vera and am sure he is the one that was attacking Eric with the baseball bat." (Pet.'s Appendix, at 8.)

9

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vassell v. McGinnis*, No. 04 Civ. 0856 (JG), 2004 WL 3088666, at *5 (E.D.N.Y. Dec. 22, 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Policano v. Herbert*, 430 F.3d 82, 86 (2d Cir. 2005) ("'[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254[,] . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'") (quoting *Jackson*, 443 U.S. at 324). Even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994).

Petitioner argues that there was insufficient evidence to support a finding of the specific elements of Gang Assault in the First Degree and Assault in the Second Degree. Specifically, he claims that the testimony of the sole eyewitness to his involvement was uncorroborated and unreliable, thereby making it insufficient as a matter of law. The Court disagrees.

As a threshold matter, to the extent petitioner suggests that the evidence must be insufficient because he was only identified by one eyewitness, the Court finds that argument unpersuasive. Although petitioner argues that his conviction was based solely on Mesa's identification, the Second Circuit has emphasized that "the testimony of a single, uncorroborated eyewitness is generally sufficient to support conviction." *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979), *cert. denied*, 441 U.S. 951 (1979); *see also Bentley v. Scully*, 41 F.3d 818, 825 (2d Cir.1994) (stating that eyewitness testimony and identification constituted a major portion of overwhelming evidence of guilt); *see also King v. Greiner*, 210 F. Supp. 2d 177, 185 (E.D.N.Y. 2002) (holding that a petitioner's claim of legally insufficient evidence lacked merit in light of eyewitness identification); *Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) (holding that the testimony of one eyewitness defeated a petitioner's claim of legally insufficient evidence).

Second, petitioner's attack on the credibility of Mesa as a witness does not warrant *habeas* relief. It is well established that a *habeas* court may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989), nor "make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony." *Fagon v. Bara*, 717 F. Supp. 976, 979 (citing *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)). Thus, a federal *habeas* court must "resolve all issues of credibility[] in favor of the jury's verdict." *United States v. Reyes*, 157 F.3d 949, 955 (2d Cir. 1998); *see also Copeland v. Walker*, 258 F. Supp. 2d 105, 120 (E.D.N.Y. 2003) ("[C]redibility determinations are exclusively the domain of the trier of fact."); *Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) ("[F]ederal habeas courts 'are not free to reassess the [fact-specific] credibility judgments by juries or to weigh conflicting testimony. . . . [A federal habeas court] must presume that the jury resolved any questions of credibility in favor of the prosecution.'") (quoting *Vera v. Hanslmaier*, 928 F. Supp. 278,

284 (S.D.N.Y. 1996)); *accord Anderson v. Senkowski*, No. CV-92-1007 (CPS), 1992 WL 225576, at *3 (E.D.N.Y. Sept. 3, 1992), *aff'd*, 992 F.2d 320 (2d Cir. 1993).

Moreover, this rule applies to credibility determinations made by juries with respect to identification testimony. *See Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). In other words, the law is clear that if there is no violation of due process, the reliability of the eyewitness testimony is a matter for the jury. *Foster v. California*, 394 U.S. 440, 442 (1969).

In the instant case, as discussed *supra*, Mesa's identification clearly satisfied the *Biggers* analysis and, therefore, the state court did not violate the petitioner's due process rights in allowing such an identification to take place in-court. Thus, to the extent that petitioner challenges Mesa's credibility or the weight of her testimony, there is no basis for *habeas* relief. Although petitioner points to certain purported inconsistencies in her testimony and her failure to mention the tattoo on the attacker to the police immediately after the attack, she was subject to cross-examination on all of these issues. The record is clear that the defense had the opportunity to cross examine the witness and make arguments regarding her credibility in his summation, that the judge instructed the jury as the credibility of witnesses (including Mesa), and that the jury weighed and ultimately found Mesa's testimony credible. Under these circumstances, there is no basis to disturb that finding. *See, e.g., United States v. Valenzuela*, 722 F.2d 1431, 1433 (9th Cir. 1983) ("With respect to identification evidence, the Due Process Clause protects solely an evidentiary interest . . ., an interest normally vindicated through the adversarial process of cross-examination. . . . The jury herein was advised of [the eyewitness'] inability to select defendant from the photo spread and her failure to mention defendant's wrinkled face and balding condition when she described the bandit after the robbery. The admission of the in-court identification was not error.") (internal quotation marks omitted); *see also Gruttola v. Hammock,* 639 F.2d 922, 928 (2d Cir. 1981) ("[T]he jury's decision was largely a matter of choosing whether to believe [the defense's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses. . . . We cannot say that no rational jury could have found guilt beyond a reasonable doubt on all the evidence."); *Williams v. Bennet,* No. 97 CIV. 1628 (HB), 1998 WL 236222, at *5 (S.D.N.Y. Apr. 20, 1998) ("[Petitioner] relies on inconsistencies in his victim's trial testimony as compared to her statements to the police, the District Attorney's office and before the grand jury. These inconsistencies were placed before the jury by the defense, which made them a central focus of its case. The jury's decision to credit [the victim's] testimony, despite its inconsistencies, over [petitioner's] testimony, is fully supported by the record."); *accord Simpson v. Portuondo*, No. 01 CIV 1379 (BSJ) (AJP), 2001 WL 830946, at *8 (S.D.N.Y. July 12, 2001) (report and recommendation) (collecting cases). Therefore, petitioner's challenge to the witness' credibility does support a claim of legal insufficiency on *habeas* review in light of the Court's review of the entire record of this case.

In sum, the Court finds that there was sufficient evidence based on Mesa's eyewitness testimony for a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find petitioner guilty beyond a reasonable doubt on the charges of which he was convicted. Accordingly, petitioner's insufficiency claim does not provide a ground for *habeas* relief.

E. Evidentiary Rulings

Petitioner also contends that the trial court erred in allowing and admitting evidence at trial relating to (1) petitioner's tattoo; and (2) the victim's scar. As set forth below, these claims are without merit and do not warrant *habeas* relief.

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983); *see generally Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law.") (citations omitted). Instead, for a *habeas* petitioner to prevail in connection with a claim regarding an evidentiary error, the petitioner must "show that the error deprived her of a fundamentally fair trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial' ") (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (internal quotation marks omitted)). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotation marks omitted)).

To constitute a denial of due process under this standard, the erroneously admitted evidence must have been "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (internal quotation marks omitted)); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (evidence must be "crucial, critical, highly significant") (internal quotation marks omitted). Moreover, the court "must review the erroneously admitted evidence 'in light of the entire record before the jury.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d at 181) (internal quotation marks omitted). In making this due process determination, the court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *Wade v. Mantello*, 333 F.3d 51, 59 n.7 (2d Cir. 2003); *Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001). The Court will address the evidence relating to petitioner's tattoo and the victim's scar separately.

1. The Tattoo

The petitioner claims that demonstrating a tattoo on his cheek in open court violated his right against self-incrimination under the Fifth Amendment, and his right to freedom of association under the First Amendment. The Court disagrees.

New York courts have consistently found that because tattoos are physical characteristics and not testimony, they do not implicate a defendant's Fifth Amendment right against self-incrimination. *See People v. Slavin*, 1 N.Y.3d 392, 397 (N.Y. 2004) (holding that the introduction of photographs of defendant's tattoos did not compel defendant to be a witness against himself because tattoos were physical characteristics, not forced testimony); *People v. Shannon*, 137 A.D.2d 850, 850 (N.Y. App. Div. 1988) (holding that "[t]he trial court ruling requiring the defendant to display his tattooed arms for the witness did not violate his privilege against self-incrimination, since it

merely compelled the defendant to exhibit physical characteristics"), *appeal denied*, 72 N.Y.2d 866 (N.Y. 1988).

The position of New York courts on this legal issue is completely consistent with clearly established federal law, as articulated by the Supreme Court of the United States. In particular, the Supreme Court has long held that "the compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination." *United States v. Dionisio*, 410 U.S. 1, 5-6 (1973); *see also Free v. Culliver,* No. 1:05-cv-0331-MEF, 2007 WL 2069841, at *11 (M.D. Ala. July 17, 2007) ("In cases in which the government seeks to compel a defendant to show various types of physical characteristics to the jury it has been repeatedly held that this does not infringe on the Fifth Amendment privilege against self-incrimination.") (collecting cases).

Petitioner argues that "the sole purpose for admitting this evidence was to prejudice petitioner, and bolster the prosecution's case, by implying that Petitioner was a member of a street gang." (Petitioner's Mem., at 19.) The Court finds that this argument is completely contradicted by the record. As discussed in detail *supra*, petitioner's tattoo was highly relevant at trial because the specific type of tattoo and its location on petitioner's face was a distinguishing feature that allowed the prosecution's key witness, in part, to identify petitioner at trial. (Trial Tr. at 414-18). Since this act was not testimonial, it is outside the protection of the Fifth Amendment right against self-incrimination. *See also Free,* 2007 WL 2069841, at *11 ("The court finds that the record supports the Court of Criminal Appeals' determination that the showing of Free's tattoo evidence was not testimonial or communicative in nature and, thus, not a violation of his right against self-incrimination. The undersigned, therefore, concludes that the appellate court's conclusion was neither "contrary to" nor an "unreasonable application of" Supreme Court precedent. As a result, Free is not entitled to habeas relief on this claim.").[8]

Petitioner further argues that showing the tattoo violated his right to freedom of association and that his alleged membership in a gang was inappropriately placed before the jury. The Court disagrees and finds petitioner's reliance on *Dawson v. Delaware*, 503 U.S. 159 (1992) to be entirely misplaced. In *Dawson*, the Supreme Court held that testimony during a sentencing hearing about the defendant's membership in the Aryan Brotherhood was an inadmissible violation of the defendant's right to free association. 503 U.S. at 163-64. That case is substantially different from the case at bar. As discussed above, the purpose of displaying the tattoo was

---

[8] Petitioner relies on *Doe v. United States*, 487 U.S. 201, 210 (1988) for the proposition that the tattoo should be considered to be testimonial because it is a "communication[] which implicitly relates factual information" by implying that he is part of a street gang. (Petitioner's Br., at 18.) However, petitioner's reliance on *Doe* is entirely misplaced. The *Doe* Court was not dealing with the compelled display of a physical characteristic; rather, it was addressing whether an order compelling a target of grand jury investigation to authorize foreign banks to disclose records of his accounts violates the target's Fifth Amendment privilege, and found that such a directive was not testimonial in nature based on the facts of that case. 487 U.S. at 219. In fact, in discussing this issue, the *Doe* Court reaffirmed its prior precedent regarding the absence of a Fifth Amendment issue where the compelled physical acts do not relate to knowledge the person may have. *See Doe,* 487 U.S. at 210 ("Thus, a suspect may be compelled to furnish a blood sample, . . . or a voice exemplar, . . . to stand in a lineup, . . . and to wear particular clothing. . . . .") (citations omitted). Thus, *Doe* provides absolutely no support for petitioner's position.

13

for identification purposes only. Unlike *Dawson*, there was no testimony regarding the tattoo having any affiliation with gang membership. Given that demonstration of a tattoo is not testimony, that the demonstration was allowed specifically for the purpose of identification, and that there was no mention of the tattoo representing a gang affiliation in the trial testimony, petitioner's right to association was not violated and there was no unfair prejudice to petitioner. *See generally Fuller v. Johnson,* 114 F.3d 491, 498 (5th Cir. 1997) ("Texas did not violate Fuller's First Amendment rights because it introduced relevant evidence . . . . The fact that Fuller was within his rights in joining the gang does not bar the use of relevant evidence at trial.").

In sum, the Court concludes that the state court's decision to allow the display of petitioner's tattoo was proper under New York State and federal law and did not violate plaintiff's First or Fifth Amendment rights, nor was there any error with respect to this evidence that denied him a fundamentally fair trial. Accordingly, this claim does not provide a basis for *habeas* relief.

### 2. The Scar

Petitioner also argues that allowing the victim to display his injuries – namely, scars – to the jury "served solely to inflame the jury, and thus prejudiced petitioner." (Petitioner's Mem., at 21.) Specifically, at trial, the court allowed the victim to display the scar from the stabbing in order to show that he had sustained serious injuries. (Tr. 117-20.) The petitioner argues that the scar was "bolstering" because an expert had already testified to its existence and that, while demonstrating the knife scar, the jury also improperly saw the victim's separate surgical scar that the victim received as a result of medical treatment at the time of the stabbing. As set forth below, the Court disagrees and finds that such evidence was properly admitted under state law and, even if its admission was erroneous under state law, it does provide a basis for *habeas* relief because its admission was not so egregious to rise to the level of constitutional error.

Under New York law, demonstrative evidence, such as a photograph of a deceased victim, is generally admissible if it tends "to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered." *People v. Pobliner,* 32 N.Y.2d 356, 369 (N.Y. 1973) (citations omitted). This rule of law regarding photographs applies equally to in-court displays of injuries by victims. *See, e.g., Franco v. Walsh,* No. 00 CIV. 8930 (AGS) (JCF), 2002 WL 596355, at *7 (S.D.N.Y. Apr. 17, 2002) (applying *Pobliner* to disabled victim being displayed to jury).

In the instant case, one element of the offenses charged (Assault in the First Degree) is the causing of serious physical injury. *See* N.Y. Penal Law § 120.10(1). Therefore, the displaying of the scar to the jury by the victim that was allegedly a direct result of the stab wound was highly probative of a "serious bodily injury" as required by the statute. The fact that a medical expert may have also testified about the injury does not require the prosecution to rely exclusively on such medical evidence to prove this element. Instead, the prosecution is entitled to corroborate that testimony by having the victim display the physical evidence of the injury to the jury.[9] *See People v. Stevens,* 76 N.Y.2d 833, 836 (N.Y. 1990) ("The People were not bound to rely entirely on the testimony of the medical expert to prove [intent to inflict serious injury and the

---

[9] The trial judge noted that, in allowing the separate surgical scar to be revealed, cross-examination could illuminate what was attributable to the surgery versus what was attributable to the actual stab wound. (Tr. 115-120, 137.)

14

photographs [of the victim's corpse] were admissible to elucidate and corroborate that testimony."); *see also Franco*, 2002 WL 596355, at *8 ("[T]he fact that Mr. Smith's injuries were described by the prosecution's medical expert does not preclude the prosecution from displaying the victim himself to the jury.").

Thus, the Court finds no error in the scar's introduction under state law. *See Dunnigan,* 137 F.3d at 125 ("Where the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to due process.") (quoting *Estelle v. McGuire,* 502 U.S. 62, 69 (1991)); *Headley v. Tilghman*, 53 F.3d 472, 474 (2d Cir. 1995) (holding "substantial and injurious effect or influence" test only reached if trial court ruling was erroneous); *see also Franco*, 2002 WL 596355, at *7-*8 (finding no *habeas* relief warranted where state court permitted the prosecutor to display disabled victim to jury because "the extent of the victim's injuries was clearly relevant. In order to prove Attempted Murder in the Second Degree, the prosecution was obligated to establish that the petitioner intended to cause Mr. Smith's death, . . . and the objective results of the beating administered by Mr. Franco were evidence from which the jury could infer such intent.") (citations omitted); *Bilbrew v. Garvin*, No. 97-CV-1422 (JG), 2001 WL 91620, at *10 (E.D.N.Y. Jan. 10, 2001) (holding that trial court did not err in allowing victim to show scars on his neck and shoulder where serious physical injury was one of the offenses charged); *Moloi v. Riley,* 762 F. Supp. 36, 38-39 (E.D.N.Y. 1991) (holding that introduction of photographs to show complainant's burn scars was proper under state law to rebut defense proffered by petitioner at trial).

Moreover, even assuming *arguendo* that the decision to allow the scar demonstration was erroneous, it was harmless in the context of the entire trial, having no substantial and injurious effect or influence on the jury's verdict. *See Dunnigan,* 137 F.3d at 125 ("For the erroneous admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it."). First, there was other evidence of the injury from medical testimony. Moreover, the scar evidence was unrelated to the critical testimony of Mesa, who was an eyewitness and identified Vera as one of the individuals involved in the assault. As discussed above, the jury observed Mesa's testimony first-hand and found her testimony to be credible. Any error in allowing the display of the scar by the victim did not rise to an error of constitutional magnitude in light of the entire record. *See also Franco,* 2002 WL 596355, at *8 (holding that the displaying of victim's injuries, even if erroneous, "was not sufficiently material to constitute a due process violation"); *Moloi,* 762 F. Supp. 2d at 38-39 (holding that even if photos of victim were erroneously admitted, the error did not rise to the level of a constitutional violation). Accordingly, this claim does not provide a basis for *habeas* relief.

### III. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Petitioner has failed to point to any State court ruling that was contrary to, or an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Accordingly, the instant *habeas* petition is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of

appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 21, 2008
Central Islip, New York

\* \* \*

The attorney for petitioner is Michael A. Gajdos, Esq., of Russo & Gajdos, LLP, 31 West Main Street, Suite 203, Patchogue, New York 11772. The attorney for respondent is Guy Arcidiacono, Esq., Assistant District Attorney, Suffolk County District Attorney's Office, Criminal Courts Building, 200 Center Drive, Riverhead, New York 11901.